# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| OPULENT TREASURES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  2:21-CV-00307-JRG |
| PORTOFINO INTERNATIONAL | § | |
| TRADING USA, INC., DAGGO TRADING, | § | |
| INC., PORTOFINO INTERNATIONAL | § | |
| TRADING GROUP, INC., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Portofino International Trading Group, Inc. ("Portofino Group") and Daggo Trading, Inc.'s ("Daggo") Motion to Dismiss on Basis of Forum Non Conveniens and Memorandum of Law in Support (the "Motion to Dismiss") (Dkt. No. 43)[1] and Defendant Portofino International Trading, USA, Inc.'s ("Portofino USA") (together with Portofino Group and Daggo, the "Defendants") Renewed Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion to Transfer") (Dkt. No. 45) (together with the Motion to Dismiss, the "Motions").   In the Motions, Defendants request that the Court transfer the above-captioned case from this District ("EDTX") to the Central District of California ("CDCA") pursuant to 28 U.S.C. § 1404(a).  Having considered the Motions, the relevant briefing, and the applicable law, the Court finds that the Motions should be and hereby are **GRANTED** with respect to Defendants' request to transfer this case to the CDCA.

---

[1] The Motion to Dismiss is styled as a "Motion to Dismiss on Basis of Forum Non Conveniens," which on its face appears to invoke the common law doctrine of *forum non conveniens*—a doctrine used "where the alternative forum is abroad."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  However, after reviewing the Motion to Dismiss, the Court finds it is more properly styled as a motion to transfer under § 1404(a).

## I.     BACKGROUND

Plaintiff Opulent Treasures, Inc. ("Opulent" or "Plaintiff") filed its complaint against Defendants on August 10, 2021.  On December 30, 2021, Plaintiff filed its amended complaint, alleging that Defendants' marking, distribution, and sale of certain home décor items (the "Accused Products") infringe, dilute, and misappropriate Opulent's registered and unregistered trademark and trade dress rights under the Lanham Act, the Texas Business and Commerce Code, and common law. (Dkt. No. 39 at ¶¶ 47, 61, 70, 77, 83, 89, 95, 101, 107–08, 114).  About two weeks later, Defendants filed the instant Motions, requesting that the Court transfer this case to the CDCA. (Dkt. Nos. 43, 45).

Plaintiff Opulent is a California corporation maintaining its principal place of business in El Segundo, California in the CDCA. (Dkt. No. 39 at ¶ 3). Defendant Portofino Group is a dissolved California corporation headquartered and with its former principal place of business at 6541 E. Washington Blvd., Commerce, California 90040 also in the CDCA.  (Dkt. No. 39 ¶ 6; Dkt. No. 43-1 ¶ 8).  Defendant Portofino USA is a California corporation headquartered and with its principal place of business at 6541 E. Washington Blvd., Commerce, California 90040 also in the CDCA.  (Dkt. No. 39 ¶ 4; Dkt. No. 43-1 ¶ 3).  Defendant Daggo is a dissolved California corporation headquartered and with its former principal place of business at 6541 E. Washington Blvd., Commerce, California 90040 also in the CDCA.  (Dkt. No. 39 ¶ 7; Dkt. No. 43-1 ¶ 11).

## II.    LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other

practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws." *Id*.

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *In re Volkswagen of Am.*, Inc., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The elevated burden to show that the transferee forum is "clearly more convenient" reflects the respect owed to the Plaintiff's choice of forum. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010).

## III.   DISCUSSION

As a preliminary matter, Defendants assert—and Opulent does not contest—that this case could have originally been filed in the CDCA because Defendants are incorporated and headquartered in the CDCA and a trademark owner may file an infringement action in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." (Dkt. No. 43 at 5; Dkt. No. 45 at 5) (citing 28 U.S.C. § 1391(b)). Accordingly, the Court analyzes the private and public interest factors to determine whether Defendants have met their burden of showing that the CDCA is clearly more convenient than the EDTX in this case.

### A.   The Relative Ease of Access to Sources of Proof

Defendants argue that this factor weighs strongly in favor of transfer because both Defendants and Opulent are California corporations with their principal places of business in the CDCA. (Dkt. No. 43 at 6; Dkt. No. 45 at 6). Accordingly, Defendants assert that all relevant physical evidence is located in the CDCA where the employees who designed, developed, and marketed the Accused Products work and where its documents are maintained. (Dkt. No. 43 at 6;

3

Dkt. No. 45 at 6). Defendants' declarant, Mr. Oscar George states that "[a]ll of the invoices, books and other records of Portofino USA are located in Los Angeles County, California," and Defendants do not maintain any records are in Texas.  (Dkt. No. 43-1 ¶¶ 5, 6, 12).  Defendants further argue that Opulent's documents are also located in the CDCA and note that Opulent has failed to identify specific documents or sources of proof in the EDTX. (Dkt. No. 43 at 6; Dkt. No. 45 at 6; Dkt. No. 48 at 4).

Opulent argues that this factor weighs against transfer because Defendants fail to specify with particularity the identity, quantity, or percentage of documents in electronic format and that Defendants fail to identify any specific documents in the CDCA. (Dkt. No. 46 at 4; Dkt. No. 47 at 4–5).

The Court finds that Defendants' arguments regarding the relative ease of access to sources of proof are persuasive. The Court notes that both Plaintiff and Defendants have offices only in the CDCA and therefore no documents at places of business in Texas or within the EDTX. While Defendants only categorically identified documents located in the CDCA, Opulent fails to rebut Defendants' showing that relevant documents are primarily in the CDCA.  Even if such documents were electronic and could be easily accessed in the EDTX, this Court has recognized that "under current precedent, such realities do not prevent this factor from weighing in [Defendants'] favor." *Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-cv-338, 2021 WL 4034515, at *2 (E.D. Tex. Sept. 3, 2021) (citing *Volkswagen II*, 545 F.3d at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)).  Accordingly, this factor weighs in favor of transfer.

## B.    The Availability of Compulsory Process to Secure the Attendance of Witnesses

Defendants argue that this factor favors transfer by identifying former Portofino USA employees with potential knowledge of relevant facts who are more likely to be found in California

4

and would otherwise be outside the subpoena power of this Court.[2]  (Dkt. No. 43 at 7; Dkt. No. 45 at 7).

In response, Opulent simply argues that Defendants "name no potential unwilling witnesses."  (Dkt. No. 46 at 4; Dkt. No. 47 at 5).  Opulent contends that Defendants are "simply speculating about [the witnesses'] willingness to attend trial in this district."  (Dkt. No. 46 at 4; Dkt. No. 47 at 5).

The Court finds that the availability of compulsory process factor is neutral. First, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.3 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software*, 2018 WL 2329752, at *6). However, Defendants have failed to identify any specific non-party witnesses.  The Court gives little weight to vague references of former employees that may or may not still be located within the subpoena power of the CDCA.  Second, neither party has been able to identify any potential non-party witnesses within the subpoena power of this Court.  Accordingly, the Court finds this factor is neutral.

### C.    The Cost of Attendance for Willing Witnesses

Defendants argue that this factor weighs strongly in favor of transfer because all of its employees with relevant knowledge live in the CDCA and would need to travel over 1,500 miles for a trial in this case. (Dkt. No. 43 at 7–8; Dkt. No. 45 at 7–8).  Defendants also argue that the CDCA is also more convenient for Plaintiff's employees.  (Dkt. No. 43 at 8; Dkt. No. 45 at 8).

Plaintiff responds that this factor primarily concerns non-party witnesses, thus arguments that Defendants' employees would be inconvenienced carry little weight. (Dkt. No. 46 at 4–5; Dkt.

---

[2] Defendants do not identify any particular former employees, nor do they definitively state that these employees are still located in California (i.e., within the subpoena power of the CDCA).  (Dkt. No. 43 at 7; Dkt. No. 45 at 7).

No. 47 at 6). Plaintiff argues that Defendants have shown "no willing nonparty witnesses who would be inconvenienced by a trial in this district."  (Dkt. No. 46 at 4; Dkt. No. 47 at 6).

Plaintiff is correct that this Court has recognized "that the convenience of party witnesses is given little weight."  *Unicorn*, 2021 WL 4034515 at *4.  However, this does not mean that the convenience of party witness is given ***no weight***.  Here, neither party identified any willing non-party witnesses.  Defendants have provided a list of witnesses it predicts may be called at trial, and Defendants have shown that all of those witnesses live in the CDCA.  (Dkt. No. 43-1 ¶ 13). Further, both Opulent and Defendants are located and operate in the CDCA.  Accordingly, the Court finds that all party witnesses are likely located in the CDCA. "[A] substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, . . . this factor [weighs] substantially in favor of transfer." *In re Genentech*, 566 F.3d at 1347.  This factor favors transfer.

### D.    The Local Interest in Having Localized Interests Decided at Home

Defendants argue that this factor weighs strongly in favor of transfer because Opulent is located in the CDCA and Defendants have always been headquartered in the CDCA. (Dkt. No. 43 at 9; Dkt. No. 45 at 9).  Defendants further argue that the EDTX has no particularized interest in this case because sales of the Accused Products occur all over the country. (Dkt. No. 43 at 9; Dkt. No. 45 at 9).  Defendants contend that the Accused Products are purchasable from anywhere in the country, and thus their use nationwide does "not give rise to a substantial interest in any single venue." (Dkt. No. 43 at 10); *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Opulent responds that this factor weighs against transfer because Defendants "do not deny that infringing sales were made in this district."  (Dkt. No. 46 at 5; Dkt. No. 47 at 7).  Opulent thus asserts that "[a]t best, 'local interest' is a neutral factor." (Dkt. No. 46 at 5; Dkt. No. 47 at 7).

6

The Court notes that all parties are corporations local to the CDCA.  The only ties Opulent relates to the EDTX are sales to unnamed Texans—despite sales occurring nationwide.  "There is little doubt that [a] District has a local interest in the disposition of any case involving a resident corporate party." *Seven Networks, LLC*, 2018 WL 4026760, at *14.  Here, all corporate parties are residents of the CDCA and have no Texas presence. Contrary to Opulent's assertion, the nationwide sale of products is not a local interest and such does not outweigh the corporate residence of all parties in the CDCA.  *Calypso Wireless, Inc. v. T-Mobile USA, Inc.*, No. 2:08-cv-441, 2010 WL 11469012, at *4 (E.D. Tex. Mar. 31, 2010).  Accordingly, the Court finds that this factor weighs in favor of transfer.

### E.    The Familiarity of the Forum with the Law That Will Govern the Case

Opulent argues that this factor weighs against transfer because Opulent asserts five causes of action under Texas state law that this Court is better suited to adjudicate: (1) common law trade dress infringement, (2) trade dress dilution under Tex. Bus. & Com. Code § 16.103, (3) common law unfair competition, (4) unjust enrichment, and (5) common law misappropriation. (Dkt. No. 46 at 5; Dkt. No. 47 at 7).

Defendants respond that "[a] trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" (Dkt. No. 43 at 10) (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 806 n.3 (Tex.App.—Austin 2001, pet. denied) (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1992, no writ)).  Further, Defendants assert that "[a]ny federal transferee court is presumed to be equally familiar with the underlying federal law." (Dkt. No. 43 at 11; Dkt. No. 45 at 10) (citing *Afiab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009)).

7

This Court has previously noted that "the need to apply a particular state's law may weigh in favor of or against transfer" and that its "familiarity with Texas law" could accordingly tilt this factor against transfer in certain cases.  *See Calypso Wireless, Inc.*, 2010 WL 11469012, at *5.  However, this Court has also found this factor neutral in a trademark case similar to the instant case—noting that where "Plaintiff asserts two federal causes of action under the Lanham Act and a third cause of action for unfair competition under Texas common law, . . . 'the Eastern District of Texas and the Central District of California are . . . equally familiar with and capable of applying the governing law.'" *Diece-Lisa Indus., Inc.*, 2020 WL 1332881, at *10.  The majority of Opulent's causes of action either arise under federal trademark law or heavily overlap with federal law and thus do not favor one federal forum over another.  *See id.*  In addition to these claims, Opulent also asserts a claim of trademark dilution under Tex. Bus. & Com. Code § 16.103. (Dkt. No. 39 at 25).  Defendants have not shown that such a claim is similar to federal law, nor rebutted Opulent's assertion that this Court's familiarity with Texas law places it in a better position to adjudicate this claim than the federal court of a sister state.  Accordingly, the Court finds that this factor weighs against transfer, but only slightly.

## F.     The Administrative Difficulties Flowing from Court Congestion

Opulent argues that the CDCA suspended jury trials for 13-months during the height of the pandemic and that a trial in this case will only occur in the CDCA after the 13-month backlog is cleared.  (Dkt. No. 46 at 6; Dkt. No. 47 at 8).

Defendants contend that this factor is neutral and that Plaintiff's arguments are speculative on this score.  (Dkt. No. 43 at 12; Dkt. No. 45 at 10–11; Dkt. No. 48 at 8–9; Dkt. No. 49 at 4). Defendants seem to acknowledge that the time to trial is faster in the EDTX—although they

contend that there is no appreciable difference between the venues.  (Dkt. No. 43 at 12; Dkt. No. 45 at 10–11; Dkt. No. 48 at 8–9; Dkt. No. 49 at 4).

The Court finds—as it has previously found—that when "[t]here is no dispute that this District's time to trial is shorter than the [transferee District's] time to trial . . . this factor weighs against transfer." *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2019 WL 6345191, at *6 (E.D. Tex. Nov. 27, 2019).  However, when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. While the Court is persuaded that this case would proceed to trial quicker in this District and this factor ultimately disfavors transfer, the Court recognizes that this factor is "the most speculative of the factors" and "should not alone outweigh th[e] other factors" when they are neutral. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (citing *id.*).

## IV.    CONCLUSION

The Court finds that (1) the relative ease of access to sources of proof factor favors transfer; (2) the availability of compulsory process factor is neutral; (3) the cost of witness attendance factor favors transfer; (4) the court congestion factor weighs against transfer; (5) the local interest factor favors transfer; and (6) the familiarity with governing law factor slightly weighs against transfer. The Court therefore finds that Defendants have met their burden and that the Motions should be **GRANTED** with respect to Defendants' request to transfer this case to the CDCA.  Accordingly, the Court **ORDERS** that the above-captioned case be transferred to the Central District of California forthwith and the Clerk is so directed.

9

**So ORDERED and SIGNED this 14th day of April, 2022.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE